UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN COURTHOUSE

| | |
|---|---|
| Charlene Vazquez, individually and on behalf of all others similarly situated, | 1:22-cv-06215 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Walmart, Inc., | Jury Trial Demanded |
| Defendant, | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.  Walmart, Inc. ("Defendant") manufactures, labels, markets, and sells granola bars represented as containing oats and honey under the Great Value brand ("Product").



2. Relevant label statements include "Oats & Honey – Crunchy Granola Bars," "Crunchy Oats …Sweet Honey," "Made With Whole Grains," "19g Whole Grain Per Serving" and pictures of freshly harvested oats next to a dripping block of a honeycomb on what appears to be a wooden picnic table.

3. The representations tell consumers the Product will contain a non-de minimis amount of honey, is primarily sweetened with honey and contains limited ingredients based on the references to only oats and honey.

4. The representations are false and misleading because the Product contains ingredients other than oats and honey and contains a *de minimis* amount of honey relative to conventional sugars.

I.   **SUGAR IS INCREASINGLY DISFAVORED AS SWEETENER**

5. According to the National Institutes of Health ("NIH"), there is a direct link between excess sugar consumption and obesity.

6. Doctors and nutritionists agree that excess sugar intake leads to as weight gain, Type 2 diabetes, dental caries, metabolic syndrome, heart disease, cancer, and even dementia.

7. One food industry insider stated that "[consumer] demand for sugar reduction [cuts] across food and beverage categories."

8. Speakers at the International Sweetener conference affirmed that "sugar avoidance was a macro trend 'that is here to stay and will only increase.'"

9. Surveys by Information Resources, Inc. ("IRI") show that 58% of consumers are avoiding sugar, and over 80% are doing so for reasons related to health and weight issues.

10. In place of sugar, consumers are increasingly seeking foods sweetened with honey.

11. This is confirmed by data obtained from the USDA, showing that the volume of

honey has almost doubled in the past 35 years, from 339 million to 603 million pounds.[1]

12. For the first time in history in 2020, honey surpassed white sugar as America's number one sweetener.

13. At least 50% of consumers are willing to pay more for foods primarily sweetened with honey.

14. Roughly 60% of consumers look for references to honey on a food's front label when deciding what to buy.

15. There are several reasons why consumers seek foods sweetened with honey instead of sugar.

16. First, almost three-quarters of consumers rate honey as "better-for-you" than sugar.

17. Second, 93% of consumers recognize that honey is a natural sweetener, because unlike sugar, it is not heavily refined through harsh unnatural processes.

18. According to the director of the National Honey Board, "Honey fits perfectly with consumers' desire to know where their food comes from and their preference for foods that are unprocessed," because it "is made by bees from the nectar of flowers."

19. Third, honey has a lower glycemic index than sugar, causing slower fluctuations in blood sugar and insulin levels.

20. Refined sugars lead to rapid spikes of blood sugar, with quick spurts of energy followed by sharp declines, characterized by tiredness, headaches, and difficulties in concentrating.

21. Fourth, honey is sweeter than sugar, so less of it is needed to achieve the same level of sweetness.

---

[1] USDA/ERS.

22. Fifth, unlike sugar, honey has small but significant amounts of nutrients such as vitamins, minerals, enzymes, phytonutrients and antioxidants.

23. These benefits promote immunity and aid digestion.

## II. PRODUCT CONTAINS *DE MINIMIS* AMOUNT OF HONEY

24. The front label promotes honey as the main ingredient in the Product after oats, shown through the name, "Oats & Honey," "Sweet Honey," and a block of honeycomb in a pool of honey.

25. The representations are false and misleading because the amount of honey is negligible and *de minimis*, shown through the ingredient list.

**INGREDIENTS:** WHOLE GRAIN ROLLED OATS, SUGAR, HIGH OLEIC CANOLA OIL, WHOLE GRAIN BROWN RICE FLOUR, CONTAINS LESS THAN 2% OF HONEY, SALT, BROWN SUGAR SYRUP, BAKING SODA, SOY LECITHIN, NATURAL FLAVORS, PEANUT FLOUR.

26. The primary sweetening ingredient is "sugar," listed second after "whole grain rolled oats."

27. The Product "Contains Less Than 2% of Honey," the fifth ingredient, after canola oil and rice flour, but before salt.

28. Consumers relying on the front label will be satisfied that whole grain oats are the main ingredient but will be dissatisfied honey is a minor ingredient, especially compared to the amount of sugar.

29. The front label promotion of only oats and honey dovetails with increased consumer demand for foods with limited, fewer ingredients.

4

30. Packaged Facts' proprietary National Consumer Survey revealed that "two-thirds of consumers prefer foods and beverages with fewer ingredients."

31. Consumer research company Mintel concluded that 59% of consumers believe that the fewer ingredients a product has, the healthier it is.

32. The representations are misleading because the Product is not made with only oats and honey and contains numerous other ingredients.

33. There is no commercial or technological barrier to formulating a granola or snack bar which only contains oats and honey.

34. There is no functional barrier to producing a granola or snack bar which contains honey as the primary, significant or exclusive sweetening ingredient.

35. This is shown through the snack bars made by HoneyBar, which state, "Ingredients Held Together Only With Honey" and list honey in the ingredients without other sweeteners.




5

36. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

37. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

38. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

39. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

40. Had Plaintiff known the truth, she would not have bought the Product or would have paid less for it.

41. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $1.99 for six packages containing two bars each (42g), excluding tax and sales, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

42. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

43. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

44. The Product has been sold at hundreds of locations in the states covered by the classes Plaintiff seeks to represent, with the representations challenged here, for several years.

45. Plaintiff Charlene Vazquez is a citizen of New York.

46. Defendant Walmart, Inc. is a Delaware corporation with a principal place of business in Bentonville, Benton County, Arkansas.

47. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

48. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, in hundreds of locations, in the States covered by Plaintiff's proposed classes.

49. The Product is available to consumers from Defendant's retail stores and its website.

50. Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred here including Plaintiff's purchase, consumption, and/or awareness and/or experiences with the issues described here.

51. Venue is at the Manhattan Courthouse because Plaintiff resides in Bronx County.

Parties

52. Plaintiff is a citizen of Bronx, New York, Bronx County.

53. Defendant is a Delaware corporation with a principal place of business in Bentonville, Arkansas, Benton County.

54. Walmart is an American multinational retail corporation that operates a chain of over 5,000 supercenters throughout the nation, selling everything from furniture to groceries.

55. While Walmart sells leading national brands, it also sells a large number of products under one of its private label brands, Great Value.

56. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

57. Previously referred to as "generic" or "store brand," private label products have

increased in quality, and often are superior to their national brand counterparts.

58. Products under the Great Value brand have an industry-wide reputation for quality and value.

59. In releasing products under the Great Value brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

60. Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

61. That Great Value branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

62. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

63. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

64. Private label products under the Great Value brand benefit by their association with consumers' appreciation for the Walmart brand as a whole.

65. The development of private label items is a growth area for Walmart, as they select only top suppliers to develop and produce Great Value products.

66. These facts show a company with a significant amount of goodwill and equity when it comes to consumer purchasing.

67. The Product is available to consumers from Defendant's retail stores and its website.

68. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at locations including Walmart, 26 W Merritt Blvd,

8

Fishkill, NY 12524, during the fall of 2021 and winter of 2022, and/or among other times.

69. Plaintiff believed and expected that the Product was made with honey as its primary sweetening ingredient instead of sugar, contained a non-*de minimis* amount of honey as an ingredient and was made of oats and honey because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product.

70. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

71. Plaintiff is part of the 58% of consumers who are avoiding sugar and trying to consume less sugar, and part of the 80% who are doing so for reasons related to health issues.

72. Plaintiff is one of the more than 50% of consumers who is willing to pay, and does pay, more for foods primarily or exclusively sweetened with honey or contain honey as a significant sweetening ingredient.

73. Plaintiff is part of the 60% of consumers who look for references to honey on a food's front label when deciding what to buy.

74. Plaintiff is part of the "two-thirds of consumers [who] prefer foods and beverages with fewer ingredients."

75. Plaintiff is amongst the 59% of consumers who believe that the fewer ingredients a product has, the healthier it is.

76. Plaintiff expected the Product contained either only oats and honey or oats, honey, and only other limited ingredients, because the front label promoted only oats and honey.

77. Plaintiff bought the Product at or exceeding the above-referenced price.

78. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

79. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

80. The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## Class Allegations

81. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Montana, Wyoming, Idaho, Kentucky, West Virginia, North Dakota, Mississippi, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

82. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

83. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

84. Plaintiff is an adequate representative because her interests do not conflict with other members.

85. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

86. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

87. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>New York General Business Law §§ 349 and 350</u>

<u>(Consumer Protection Statute)</u>

88. Plaintiff incorporates by reference all preceding paragraphs.

89. Plaintiff believed the Product contained a non-de minimis amount of honey, that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar, and that it contained either only oats and honey or a limited number of ingredients beyond these two.

90. Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

91. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

92. Plaintiff relied on the representations and omissions to believe the Product contained a non-de minimis amount of honey, that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar, and that it contained either only oats and honey or a limited number of ingredients beyond these two.

93. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

94. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are

similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

95. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

96. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

97. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

98. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

99. The Product was manufactured, identified, distributed, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained a non-de minimis amount of honey, that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar, and that it contained either only oats and honey or a limited number of ingredients beyond these two.

100. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

101. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

102. Defendant was aware of consumer demand for honey compared to sugar, and the desire for foods with limited, fewer ingredients.

103. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained a non-de minimis amount of honey, that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar, and that it contained either only oats and honey or a limited number of ingredients beyond these two.

104. Defendant's representations affirmed and promised that the Product contained a non-de minimis amount of honey, that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar, and that it contained either only oats and honey or a limited number of ingredients beyond these two.

105. Defendant described the Product so Plaintiff and consumers believed it was made with honey as its primary sweetening ingredient instead of sugar, contained a non-*de minimis* amount of honey as an ingredient and was made of oats and honey, which became part of the basis of the bargain that it would conform to its affirmations and promises.

106. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

107. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its authentic, high-quality products, honestly marketed to consumers.

108. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

109. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

110. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

111. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

112. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

113. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained a non-de minimis amount of honey, that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar, and that it contained either only oats and honey or a limited number of ingredients beyond these two.

114. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained a non-de minimis amount of honey, that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar, and that it contained either only oats and honey or a limited number of ingredients beyond these two, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

115. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

116. Defendant misrepresented and/or omitted the attributes and qualities of the Product,

that it contained a non-de minimis amount of honey, that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar, and that it contained either only oats and honey or a limited number of ingredients beyond these two.

117. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

118. Defendant knew of the issues described here yet did not address them.

119. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

120. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims, and restitution and disgorgement;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: July 21, 2022

          Respectfully submitted,

          /s/Spencer Sheehan
          Sheehan & Associates, P.C.
          Spencer Sheehan
          60 Cuttermill Rd Ste 412
          Great Neck NY 11021
          Tel: (516) 268-7080
          Fax: (516) 234-7800
          spencer@spencersheehan.com